IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JONATHAN CHAN and KARLA FORD, § | |
| § | |
| Plaintiffs, § | |
| § | |
| VS. § | CIVIL ACTION NO. H-12-0325 |
| § | |
| BOARD OF REGENTS OF TEXAS § | |
| SOUTHERN UNIVERSITY d/b/a TEXAS § | |
| SOUTHERN UNIVERSITY THURGOOD § | |
| MARSHALL SCHOOL OF LAW, *et al.*, § | |
| § | |
| Defendants. § | |

**MEMORANDUM AND OPINION**

Law students who were dismissed from law school for failing to meet academic requirements sued the school's faculty, administrators, and board, claiming due process violations, breach of contract, negligent hiring, and negligent and intentional infliction of severe mental distress, and seeking reinstatement and damages.[1] The plaintiffs, Jonathan Chan and Karla Ford, two former students at Texas Southern University ("TSU") Thurgood Marshall School of Law, sued the TSU Board of Regents, their contracts professor, Shelley Smith, individually and in her official capacity, and "Doe" administrator and faculty defendants. Chan and Ford were dismissed for failing to maintain a cumulative 2.0 grade point average, as required by the law school's Student Rules and Regulations. (Docket Entry No. 1).

---

[1] In the introduction to their complaint, the plaintiffs stated that they have "asserted a claim against . . . all Defendants for intentional and negligent infliction of emotional distress, defamation, slander, libel, and injunctive and declaratory relief." (Docket Entry No. 1, at 1). The plaintiffs do not mention defamation, slander, or libel claims anywhere else in their complaint, nor do they indicate which of the alleged facts would give rise to those claims.

The Board of Regents moved to dismiss the damages claims under Federal Rule of Civil Procedure 12(b)(1) based on state sovereign immunity. The Board also sought summary judgment on the due process and other claims for which the plaintiffs sought reinstatement. (Docket Entry No. 8). Smith, who was not served until after the Board of Regents moved to dismiss and for summary judgment, filed a motion to dismiss in her individual and official capacities by adopting TSU's motion. (Docket Entry No. 14). This court heard oral argument on the defendants' motions. (Docket Entry No. 18).

The plaintiffs agreed to abandon their damages claims against TSU and the faculty in their official capacities. (*Id.*) The court grants the defendants' motion to dismiss with respect to those claims. Based on the complaint; the motion, response, and related filings; the arguments of counsel; the record; and the applicable law, this court grants the defendants' motion for summary judgment as to the due-process claim. Because that claim provided the only basis for federal jurisdiction, the plaintiffs' remaining state-law claims are dismissed. A dismissal order is separately entered.

The reasons for these rulings are explained below.

**I.      Background**

Chan and Ford were first-year law students at TSU from fall 2010 to May 2011, when they were dismissed for failure to meet minimum academic standards. (Docket Entry No. 1, ¶¶ 14–15). TSU's Student Rules and Regulations[2] establish a minimum academic standard to continue study

---

[2] The defendants appended to their motion a document entitled "Texas Southern University Thurgood Marshall School of Law Student Rules and Regulations 2011–2012." (Docket Entry No. 8, Ex. 2). No party argues that these rules differ from the 2010–2011 rules. At least one reported case suggests that TSU has employed the policy at issue for years. *Jackson v. Tex. S. Univ.–Thurgood Marshall Sch. of Law,* 231 S.W.3d 437, 438 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ("Appellant, Robert Jackson, was dismissed from Texas Southern University's Thurgood Marshall School of Law for failure to maintain at least a 2.0 grade point average.").

at the law school. "A first year student must achieve a cumulative law school grade point average of 2.0 or above. **This rule is non-waivable**." (Docket Entry No. 8, Ex. 2) (emphasis in original). According to the Chair of the Academic Standards Committee, this rule ensures that "only students with the ability to graduate from the Law School and to successfully sit for the bar exam are allowed to continue in law school" and protects poorly performing students from accumulating debt to "finance studies that will likely end in failure." (Docket Entry No. 8, Ex. 1, Walker Aff., ¶ 7). In May 2011, Chan had a 1.82 GPA and Ford had a 1.83 GPA. (Docket Entry No. 8, Exs. 8–9).

Both Chan and Ford received "D–" grades in Contracts II, taught by visiting professor Shelley Smith. (*Id.*) Fifty percent of the grade was based on four exams given in the course; the other fifty percent was based on the First-Year Uniform Exam, a sixty-question multiple-choice test given to all first-year students. (Docket Entry No. 8, at 4 (citing Docket Entry No. 8, Ex. 2)). The plaintiffs challenged only one grade from Contracts II: the grade on their final exams.

The Contracts II final had eight questions. The questions were multiple choice, and students had to write short answers explaining their decisions to select or reject each multiple-choice option. (Docket Entry No. 16, Ex. 8, Chan & Ford Exams). The highest score possible was 100 points. (Docket Entry No. 8, Ex. 6, Ford Pet., at 3). Chan and Ford each answered only one of the eight questions correctly. Chan earned a score of 13 and Ford a score of 2. (Docket Entry No. 16, Ex. 5, Final Exam Grades, at 5–6). The summary-judgment record contains the multiple-choice answer key and the response report listing each student's multiple-choice answers. (Docket Entry No. 8, Ex. 3, Class Response Report). The record also contains Chan and Ford's graded exams, which include both the multiple-choice and short-answer portions. (Docket Entry No. 16, Ex. 8). The

record does not contain the other students' short-answer responses or an answer key for the short-answer portion.

The Student Rules and Regulations provide a procedure for students to request grade changes from the Academic Standards Committee. (Docket Entry No. 8, Ex. 2). A student-initiated grade change must be based on a computational error or on discrimination against the specific student "through the use of a grossly inconsistent standard as compared to the professor's other students." (*Id.*) "The committee must find clear and convincing evidence that the . . . student has proven the basis for the grade change." (*Id.*) Chan and Ford each appealed their academic dismissals and Contracts II grades to the Academic Standards Committee on the basis that Smith had not allowed them to review their graded Contracts II finals, had not communicated to them the reasons they received such low grades on the final, had not confirmed the accuracy of the grades to them, and had not consistently or clearly explained her expectations on exams throughout the semester. (Docket Entry No. 8, Exs. 4, 6). On September 2, 2011, the plaintiffs argued their petitions before the Academic Standards Committee. (Docket Entry No. 8, Exs. 5, 7). On September 6, 2011, the Academic Standards Committee issued letters denying the plaintiffs' petitions for grade changes because of insufficient evidence. (*Id.*)

The plaintiffs filed this suit on February 2, 2012. (Docket Entry No. 1). The plaintiffs complain of a lack of feedback from Smith on her grading procedures for the first three Contracts II exams and a lack of opportunity to review their fourth Contracts II exam "to determine whether their grades on that examination were given arbitrarily." (*Id.*, ¶¶ 17–18). The plaintiffs allege that the defendants have withheld information about the basis for the final-exam grades, including where points were awarded or deducted and examples of model answers. (*Id.*, ¶¶ 17–20). The plaintiffs

4

allege that without this information, they could not effectively appeal their Contracts II grades to the Academic Standards Committee or challenge their dismissals. (*Id.*, ¶¶ 21–27). They allege that the unsuccessful appeal process and resulting academic dismissals violated their due-process rights because the Committee hearings lasted only five minutes; the Committee relied on an email from Smith explaining that no computational error or discriminatory grading had occurred; and neither Smith nor the Committee gave them access to the facts they believe were necessary to contradict Smith's statements. (*Id.*, ¶¶ 22–35). The defendants argue that they are entitled to summary judgment because there is no basis for the relief the plaintiffs seek.

## II.     The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for

summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

**III.   Analysis**

    **A.   The Due-Process Claims**

Chan and Ford allege violations of their rights to substantive and procedural due process. They allege that a professor arbitrarily graded one of their exams, that they did not receive a legitimate chance to appeal their grades, and that the law school wrongfully denied their grade-change requests.

Federal courts strongly disfavor claims that require judges to second-guess judgments about the academic quality of a student's work. *See, e.g.*, *Keys v. Sawyer*, 353 F. Supp. 936, 940 (S.D. Tex. 1973) ("The federal judiciary should not adjudicate the soundness of a professor's grading system, nor make a factual determination of the individual grades."). The Supreme Court has held that federal courts should not override grading and similar decisions about academic merit unless they so substantially depart from accepted academic norms as to demonstrate a failure to exercise professional judgment. *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 226 (1985).

The plaintiffs rely on a school-discipline case, *Goss v. Lopez*, 419 U.S. 565 (1975), for the proposition that TSU violated their due-process rights by dismissing them for academic nonperformance without an adequate hearing. *Goss* involved high-school students who were suspended for ten days, as punishment for misbehaving, without the benefit of a hearing before the punishment was imposed. *Id.* at 575–76. The Court held that to suspend a student from public school for disciplinary reasons, due process requires "that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* at 581. The Court explained that "a student's legitimate entitlement to a public education [is] a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause." *Id.* at 574. But the case law is clear that procedural requirements for academic dismissals are far less stringent than those required for disciplinary dismissals. *See Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S. 78, 85–86 (1978) (holding that due process did not require a hearing when dismissing a student from medical school for academic reasons). Contrary to the plaintiffs' argument, when a student is dismissed for academic

7

reasons, procedural due process does not require that the student receive a hearing. *Horowitz*, 435 U.S. at 86; *Ceasar v. Holt*, 245 F. App'x 396, 397 (5th Cir. 2007) (per curiam). A student facing academic dismissal is entitled only to notice and an opportunity to respond. Due process requires nothing more. *See Davis v. Mann*, 882 F.2d 967, 974–75 (5th Cir. 1989) (noting that a student who was given a hearing "received even more procedural protections than are required by the Fourteenth Amendment in an academic dismissal context"); *see also Horowitz*, 435 U.S. at 87–88 ("[D]ecisions of state and federal courts, over a period of 60 years, unanimously hold[] that formal hearings before decisionmaking bodies need not be held in the case of academic dismissals.").

It is undisputed that both Chan and Ford were dismissed for academic reasons. Neither Chan nor Ford argues that they lacked notice of the school's policy to dismiss students who fail to maintain a 2.0 cumulative GPA. Although they challenge the policy of curving grades as inherently arbitrary, they do not challenge the academic reason for TSU's policy: to dismiss students who do not show promise for success in future studies, on the bar exam, or in legal practice. Chan and Ford each availed themselves of TSU's policy of allowing students to petition for grade changes. (*See* Docket Entry No. 8, Exs. 4, 6). TSU gave the plaintiffs an oral hearing on their petitions. Chan and Ford received all the process that was due — and more — for their challenges to their grades and academic dismissals. *See Horowitz*, 435 U.S. at 86–88; *Ceasar*, 245 F. App'x at 397; *Davis*, 882 F.2d at 974–75.

The plaintiffs' due-process argument has a substantive as well as a procedural component. They argue that Smith graded them arbitrarily, as part of a concerted effort to "curve [them] out" of law school, (Docket Entry No. 1, ¶ 29), and concealed the basis for the grading such that a

8

legitimate appeal was impossible. This argument is precluded by the record and the applicable law.

TSU uses anonymous examination numbers to prevent a professor from using personal reasons to give a student a grade higher or lower than the student earned. (Docket Entry No. 8, Ex. 2). Multiple-choice tests are generally objective, but the test at issue required short-answer responses for each multiple-choice question answered. Most of the points used to score the test were for the short-answer responses explaining the answer to each multiple-choice question. Chan and Ford both received copies of their graded exams during discovery. They do not dispute that Smith graded their exams, that their exams were graded anonymously, that they each missed seven out of the eight multiple-choice questions, that Smith reviewed and marked their short answers, and that the short answers, and the comments, related to the contract law tested by the exam.

Curved grading is a commonly accepted academic norm and does not demonstrate a lack of professional judgment. Even without comparison to other students' exams, Chan and Ford cannot raise a factual dispute material to determining whether their constitutional rights were violated. The record shows that, as a matter of law, Smith's grading did not depart from accepted academic norms so as to violate the plaintiffs' substantive due-process rights. Based on the undisputed record, Chan and Ford cannot prevail on their claim that their grades or the curve applied were so arbitrary as to be unconstitutional.

Nor was TSU's decision to dismiss the plaintiffs from the law school such a substantial departure from accepted academic norms as to violate their substantive due process rights. Chan and Ford failed to meet the minimum 2.0 GPA in either first-year semester. The basis for the plaintiffs' dismissal was an openly announced, objectively academic, and "non-waivable" law

school policy.  (*Id.*)  Chan and Ford do not dispute that even before their final Contracts II grades, their academic performance was marginal.  Their attempt to avoid the consequences by asking for a change of their Contracts II grades was denied because there was "insufficient evidence" to support the request.  (Docket Entry No. 8, Exs. 5, 7).  The plaintiffs' contention that their "D–" grades were "not based upon their performance on the examinations" cannot be squared with the undisputed facts.  (Docket Entry No. 1, ¶ 16).  The plaintiffs each missed seven of eight multiple-choice questions on the final exam, almost 60 % of the Contracts II class answered more of the multiple-choice questions correctly, and the short-answers and the grades were based on the tested material.  (*See* Docket Entry No. 8, Ex. 3; Docket Entry No. 16, Ex. 8).

Based on the record before this court, the plaintiffs cannot raise a fact dispute as to whether the defendants violated their due-process rights.  TSU and Smith are entitled to summary judgment.

### B. The State-Law Claims

The plaintiffs have also asserted claims against Smith in her individual capacity for intentional and negligent infliction of mental and emotional distress.  The plaintiffs filed their complaint in this court based on federal-question jurisdiction under 28 U.S.C. § 1331.  Federal courts may decide claims arising from violations of federal law and accompanying state-law claims over which the court may exercise supplemental jurisdiction.  *See* 28 U.S.C. § 1367(a) ("Except as otherwise provided . . . the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").  But because the defendants are entitled to summary judgment on the plaintiffs' only federal claims, no federal question remains before this court.  Although this fact alone does not divest this court of jurisdiction,

the court must decide whether to exercise supplemental jurisdiction over the remaining state-law claims. *See id.*, § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction.").

"[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well."). "Moreover, the general rule in the Fifth Circuit is to dismiss state law claims when the federal claims they supplement are dismissed." *Bell v. Harris County*, Civ. A. No. H–10–2421, 2011 WL 2494103, at *15 (S.D. Tex. June 22, 2011) (citing *Parker & Parsley Petrol. Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992); *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)); *see also Enochs v. Lampasas County*, 641 F.3d 155, 161–62 (5th Cir. 2011).

When summary judgment is granted on a plaintiff's only federal claim, a court "has ample discretion to decline supplemental jurisdiction over the state law claims." *Tillman v. Memorial Hermann Hosp. Sys.*, Civ. A. No. H–12–1072, 2012 WL 5207592, at *3 (S.D. Tex. Oct. 22, 2012); *see also Bell*, 2011 WL 2494103, at *15–16. The district courts may decline to exercise supplemental jurisdiction if the state-law claim raises a novel or complex issue of state law; the claim substantively predominates over the claim over which the district court has original jurisdiction; the district court has dismissed all claims over which it has original jurisdiction; or in

exceptional circumstances, there are other compelling reasons for declining jurisdiction.  28 U.S.C. § 1367(c).  In determining whether to exercise or decline supplemental jurisdiction over state law claims, both the factors listed in § 1367(c), and common-law factors of "judicial economy, convenience, fairness and comity" must be considered.  *Enoch*, 641 F.3d at 159.

Here, the plaintiffs' state-law claims are neither complex nor particularly novel.  Although no Texas court appears to have yet done so, courts around the country have rejected similar efforts to frame a purely academic failure by a student in professional school as a state-law breach of a contractual right.[3]  Smith's grading was not "extreme and outrageous," as required to recover for

---

[3] *See, e.g.*, *DeMarco v. Univ. of Health Sci.*, 352 N.E.2d 356, 361–62 (Ill. 1976) ("A contract between a private institution and a student confers duties upon both parties which cannot be arbitrarily disregarded and may be judicially enforced . . . [but] a decision of the school authorities relating to the academic qualification of the students will not be reviewed." (citation omitted)); *Raethz v. Aurora Univ.*, 805 N.E.2d 696, 700–01 (Ill. App. Ct. 2004) (holding that no evidence supported a breach of contract where an academically dismissed master's in social work candidate's "failures were well documented and the faculty and plaintiff's supervisors were concerned with allowing plaintiff to continue working in a setting in which she would have to interact with clients"); *Alsides v. Brown Inst., Ltd.*, 592 N.W.2d 468, 473 (Minn. Ct. App. 1999) ("[C]ertain of appellants' claims challenge the general quality of the instructors and the education they received from Brown, even though such claims are styled as breach of contract, fraud, and misrepresentation.  Those claims were properly dismissed by the district court.  Where the essence of the complaint is that the school failed to provide an 'effective education,' it is irrelevant whether the claim is labeled as a tort action or breach of contract, 'since in either situation the court would be forced to enter into an inappropriate review of educational policy and procedures.'" (quoting *Cavaliere v. Duff's Bus. Inst.*, 605 A.2d 397, 402 (Pa. Super. Ct. 1992))); *Mittra v. Univ. of Med. & Dentistry of N.J.*, 719 A.2d 693, 697 (N.J. Super. Ct. App. Div. 1998) (refusing to apply "contract principles to controversies concerning student academic performance" because "[a] graduate or professional school is surely the best judge of its student's academic performance and his ability to master the required curriculum"); *Sofair v. State Univ. of N.Y. Upstate Med. Ctr. Coll. of Med.*, 388 N.Y.S.2d 453, 457 (N.Y. App. Div. 1976) (explaining that the dismissal of a medical student did not violate express or implied contractual duties based on representations of faculty concerning courses the student could take when the medical college's dismissal and withholding of a degree rested on the faculty's genuine doubt concerning the student's fitness), *rev'd on other grounds*, 377 N.E.2d 730 (N.Y. 1978); *see also Vurimindi v. Fuqua Sch. of Bus.*, 435 F. App'x 129, 133 (3d Cir. 2011) (per curiam) ("A plaintiff must do more than allege that the school did not provide a good or quality education. Both [North Carolina and Pennsylvania] require definite and certain terms before a contract can be

intentional infliction of emotional distress under Texas law, *see Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993), because it was within the bounds of common academic practice. And Texas does not recognize an independent cause of action for negligent infliction of emotional distress. *Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex. 1993). But § 1367(c)(3) weighs heavily in favor of dismissing the remaining state-law claims because no federal issue remains.

Interests of judicial economy and fairness also favor declining supplemental jurisdiction. TSU's motion to dismiss did not address the state-law claims against Smith in her individual capacity. (*See* Docket Entry No. 8). Although Smith adopted that motion and the reply to the plaintiffs' response in opposition, only the reply mentions the state-law claims against Smith. (*See id.*; Docket Entry No. 17, at 1–2).

The plaintiffs' remaining claims are dismissed without prejudice for lack of subject-matter jurisdiction.

## IV.   Conclusion

The defendants' motion to dismiss and for summary judgment is granted. The federal claims are dismissed with prejudice. The state-law claims are dismissed without prejudice.

SIGNED on November 16, 2012, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

---

considered binding." (citations omitted)).